UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A., national association,<br><br>Plaintiff,<br><br>v.<br><br>JASVINDER SINGH, an individual resident and citizen of California dba NS TRANSPORT; DOES 1-10,<br><br>Defendants. | Case No. 1:23-cv-00067-BAM<br><br>**ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION**<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(Doc. 8)<br><br>FOURTEEN-DAY DEADLINE |

On March 16, 2023, Plaintiff BMO Harris Bank N.A. ("Plaintiff") filed a motion for default judgment against Defendant Jasvinder Singh dba NS Transport ("Defendant"). (Doc. 8.) No opposition was filed, and the time in which to do so has expired. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On April 18, 2023, the Court vacated the motion hearing and requested supplemental briefing regarding service of process. (Doc. 11.) Plaintiff filed an amended return of service on April 24, 2023, and a supplemental declaration of counsel on April 27, 2023. (Docs. 12, 13.) The Court deems the matter suitable for decision without oral argument pursuant to Local Rule 230(g).

1

Having considered the moving papers and the Court's file, and for the reasons detailed below, the Court will recommend that Plaintiff's motion for default judgment be granted with a minor reduction in the amount of requested attorneys' fees.

## I. BACKGROUND[1]

### A. Loan Agreements

#### 1. Agreement 23001 – August 28, 2020

On August 28, 2020, Plaintiff and Defendant entered into a Loan and Security Agreement with contract number ending 23001 ("Agreement 23001"), pursuant to which Plaintiff agreed to finance Defendant's purchase of certain vehicles for use in Defendant's business ("23001 Vehicle"), and Defendant Agreed to pay Plaintiff $90,006.00, including interest. (Doc. 1, Ex. 1.)

#### 2. Agreement 43001 – September 18, 2020

On September 18, 2020, Plaintiff and Defendant entered into a Loan and Security Agreement with contract number ending 43001 ("Agreement 43001"), pursuant to which Plaintiff agreed to finance Defendant's purchase of certain vehicles for use in Defendant's business ("43001 Vehicle"), and Defendant agreed to pay Plaintiff $186,356.16, including interest. (Doc. 1, Ex. 2.)

#### 3. Agreement 43002 – October 6, 2020

On October 6, 2020, Plaintiff and Defendant entered into a Loan and Security Agreement with contract number ending 43002 ("Agreement 43002"), pursuant to which Plaintiff agreed to finance Defendant's purchase of certain vehicles for use in Defendant's business ("43002 Vehicle"), and Defendant agreed to pay Plaintiff $186,574.08, including interest. (Doc. 1, Ex. 3.)

#### 4. Agreement 29001 – May 17, 2022

On May 17, 2022, Plaintiff and Defendant entered into a Loan and Security Agreement with contract number ending 29001 ("Agreement 29001"), pursuant to which Plaintiff agreed to finance Defendant's purchase of certain vehicle for use in Defendant's business ("29001 Vehicle"), and Defendant agreed to pay Plaintiff $273,447.00, including interest. (Doc. 1, Ex. 4.)

---

[1] Background facts are derived from the allegations in the Complaint filed on January 17, 2023. (Doc. 1.)

5. Agreement 37001 – June 6, 2022

On June 6, 2022, Plaintiff and Defendant entered into a Loan and Security Agreement with contract number ending 37001 ("Agreement 37001"), pursuant to which Plaintiff agreed to finance Defendant's purchase of certain vehicles for use in Defendant's business ("37001 Vehicles"), and Defendant agreed to pay Plaintiff $382,713.60, including interest. (Doc. 1, Ex. 5.)

6. Agreement 19001 – June 14, 2022

On June 14, 2022, Plaintiff and Defendant entered into a Loan and Security Agreement with contract number ending 19001 ("Agreement 19001"), pursuant to which Plaintiff agreed to finance Defendant's purchase of certain vehicles for use in Defendant's business ("19001 Vehicles"), and Defendant agreed to pay Plaintiff $259,904.64, including interest. (Doc. 1, Ex. 6.)

**B. The Security Interest**

In consideration for entering the above-described agreements, Defendant granted Plaintiff a first-priority security interest in the respective vehicles. The vehicles consist of the following:

23001 Vehicle

    a. 2021 Great Dane Refrigerated Van, Vin: 1GR1A0624MW227601, with attached 2020 Thermo King S-600 Serial: 6001324002

43001 Vehicle

    b. 2021 Freightliner Cascadia-Series:CA12564SLP 125"BBC Conv Cab w/72"RR SLPR Tractor 6x4, Vin: 3AKJHHDR2MSMA5195

43002 Vehicle

    c. 2021 Freightliner Cascadia-Series:CA12564SLP 125"BBC Conv Cab w/72"RR SLPR Tractor 6x4, Vin: 3AKJHHDR8MSMF1520

29001 Vehicle

    d. 2023 Peterbilt 579-Series: 579 123.5"BBC Conv Cab SBA Tractor 6x4 Vin: 1XPBD49X8PD799855

<u>37001 Vehicles</u>

 e. 2023 Great Dane Reefer Serial: 1GR1A0621PE509592 with attached 2022 Thermo King S-600 Serial: 6001359893

 f. 2023 Great Dane Dry Vans: 53" Serial: 1GR1A0624PT512501

 g. 2023 Great Dane Reefer Serial: 1GR1A0629PB514279 with attached 2022 Thermo King S-600 Serial: 6001367043

<u>19001 Vehicles</u>

 h. 2020 Great Dane Refrigerated Vans: 53' Serial: 1GR1A0625LW156617 with attached 2020 Thermo King S-600 Serial: 6001294652

 i. 2020 Peterbilt 579-Series: 579 123.5"BBC Conv Cab SBA Tractor 6x4 Serial:1XPBD49X2LD667734.

Plaintiff perfected its security interest in the vehicles by recording its liens on the Certificate of Title for each vehicle. (Compl., ¶ 16.)

**C. Default by Defendant**

Defendant is in default under the above-reference Loan and Security Agreements (hereinafter "Agreements") for his failure to pay the amounts due thereunder. (Compl., ¶ 17.) Defendant failed to make the October 1, 2022 payment due under Agreements 23001, 43002, 29001, and 19001. Defendant failed to make the October 3, 2022 payment due under Agreement 43001. Defendant failed to make the November 2022 payment due under Agreement 37001. Defendant's defaults under the Agreement are continuing. (*Id.*, ¶ 18.) Pursuant to the Agreements, the entire amounts due have been accelerated. As of the respective dates of default, the principal amount due and owing after acceleration is as follows:

- Agreement 23001:  $47,549.68
- Agreement 43001:  $87,619.13
- Agreement 43002:  $90,880.55
- Agreement 29001:  $201,087.35
- Agreement 37001:  $294,056.69
- Agreement 19001:  $198,793.46

(*Id.*, ¶ 19.)

///

4

Under the Agreements, from the date of defaults to the dates of acceleration, accrued and unpaid interest due and owing under the Agreements is as follows:

- Agreement 23001: $398.69
- Agreement 43001: $703.75
- Agreement 43002: $729.79
- Agreement 29001: $0.00
- Agreement 37001: $2,239.24
- Agreement 19001: $1,991.31

(*Id.*, ¶ 20.)

Defendant is obligated to pay interest on all unpaid amounts at the default interest rate of eighteen percent (18%) per annum or the maximum rate not prohibited by applicable law. (*Id.*, ¶ 21.) The daily default rates of interest accruing since the dates of acceleration on December 21, 2022, are as follows:

- Agreement 23001: $23.77
- Agreement 43001: $43.81
- Agreement 43002: $45.44
- Agreement 29001: $100.54
- Agreement 37001: $147.03
- Agreement 19001: $99.40

(*Id.*)

Under the Agreements, Defendant is obligated to pay late charges and other fees. (*Id.*, ¶ 22.) As of the respective dates of default, late charges have accrued under the Agreements as follows:

- Agreement 23001: $150.02
- Agreement 43001: $388.24
- Agreement 43002: $583.05
- Agreement 29001: $455.74
- Agreement 37001: $956.79
- Agreement 19001: $541.46

(*Id.*, ¶ 23.)

By letters dated December 23, 2022, Plaintiff notified Defendant of his respective defaults under the Agreements, and of Plaintiff's election to accelerate the loans as evidenced by the Agreements. In addition, Plaintiff demanded that Defendant pay the amounts due under the respective Agreements and surrender the vehicles. (*Id.*, ¶ 26; Doc. 1, Ex. 7.) Despite the demand,

Defendant has failed and refused to pay the amounts due and owing under the respective Agreements. (Compl., ¶ 27.) As of the filing of the lawsuit, the collateral vehicles remain in Defendant's possession or control. (*Id.*, ¶ 29.)

Plaintiff initiated this action on January 17, 2023, asserting causes of action for injunctive relief, specific performance, claim and delivery, and breach of contract against Defendant. According to the original return of service, Plaintiff served Defendant with the summons and complaint by substituted service at his "Home" located at "3661 West Shield Avenue, #263, Fresno, CA 93722," by leaving a copy of the summons and complaint with the co-occupant, John Doe, on February 10, 2023. (Doc. 5.) Thereafter, a copy of the summons and complaint were mailed to Defendant at the same address. (*Id.*) Defendant did not respond to the complaint, and on March 6, 2023, Plaintiff filed a request for entry of default. (Doc. 6.) On the same day, the Clerk of the Court entered default against Defendant. (Doc. 7.)

On March 16, 2023, Plaintiff filed the instant motion for default judgment. (Doc. 8.) Plaintiff requests default judgment in the amount of $1,004,179.00, which includes a request for attorney's fees in the amount of $7,287.50, court costs of $583.00, and repossession fees of $11,920.00, less any net proceeds received from the sale of the collateral vehicles. Plaintiff also seeks immediate possession of the following unrecovered collateral vehicles:

<u>43001 Vehicle</u>

2021 Freightliner Cascadia-Series:CA12564SLP 125"BBC Conv Cab w/72"RR SLPR Tractor 6x4, Vin: 3AKJHHDR2MSMA5195

<u>29001 Vehicle</u>

2023 Peterbilt 579-Series: 579 123.5"BBC Conv Cab SBA Tractor 6x4 Vin: 1XPBD49X8PD799855

<u>37001 Vehicle</u>

2023 Great Dane Dry Vans: 53" Serial: 1GR1A0624PT512501

<u>19001 Vehicle</u>
2020 Great Dane Refrigerated Vans: 53' Serial: 1GR1A0625LW156617 with attached 2020 Thermo King S-600 Serial: 6001294652

(Doc. 8 at p. 7.) The other security-interest vehicles are in Plaintiff's possession pending sale. (Doc. 8-1, Declaration of Whitney Oliver ("Oliver Decl.") at ¶18.)

Following a preliminary review of the motion, the Court requested supplemental briefing to address certain identified discrepancies in the proof of service of the summons and complaint. (Doc. 11.) Plaintiff filed an amended proof of service on April 24, 2023, and supplemental briefing on April 24, 2023. (Docs. 12, 13.)

## II.    LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002)

## III.    DISCUSSION

### A. Service of Process

In deciding whether to grant or deny a default judgment, a court must assess the adequacy of the service of process on the party against whom default is requested. *See*, *e.g.*, *Trujillo v. Harsarb, Inc.*, No. 1:21-cv-00342-NONE-SAB, 2021 WL 3783388, at *4 (E.D. Cal. Aug. 26, 2021) ("As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment."); *Coach, Inc. v. Diva Shoes & Accessories*, No. 10-5151 SC, 2011 WL 1483436, at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v. Check Resolution Service, Inc.*, No. 1:10-cv-00716 AWI GSA, 2010 WL 5200912, at *1 (E.D. Cal. Dec. 15, 2010).

Plaintiff is suing an individual in this action, Defendant Jasvinder Singh. Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States. An individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

According to the original proof of service filed on February 15, 2023, Plaintiff served Defendant with the summons and complaint by substituted service at his "Home" located at "3661 West Shield Avenue, #263, Fresno, CA 93722," by leaving a copy of the summons and complaint with the co-occupant, John Doe, on February 10, 2023. (Doc. 5) (emphasis added). Thereafter, a copy of the summons and complaint were mailed to Defendant at the same address. (*Id.*)

However, because the Complaint alleges that Defendant resides at 3661 W. Shields, Apt 263, Fresno, CA 93722, and Plaintiff's motion for default judgment indicates that Defendant was served at his business address pursuant to Cal. Civ. Proc. Code § 415.20(a), the Court requested supplemental briefing to clarify, correct, or otherwise explain the discrepancies. (Doc. 11.)

On April 24, 2023, Plaintiff filed an amended proof of service of the summons and complaint, which states that Defendant Jasvinder Singh was served by leaving a copy of the summons and complaint at his dwelling house or usual place of abode, 3661 W. Shields Ave, Apt. 263, Fresno, CA 93722, with co-occupant John Doe. (Doc. 12.) The summons and complaint were subsequently mailed to Defendant Jasvinder Singh at the same address. (*Id.* at p.

5.) In a supplemental declaration, Plaintiff's counsel explains that that the original proof of service inadvertently listed Defendant's address as 3661 West Shield Avenue, #263, Fresno, CA 93722, but at the time of completing the Proof of Service, the address should have been written as 3661 W. Shields Ave., Apt 263, Fresno, CA 93722-6588. (Doc. 13, Suppl. Decl. of Ken I. Ito at ¶ 4.) Counsel further explains that the motion for default judgment "inadvertently wrote the Defendant's address as a 'business' while it should have been 'home' address." (*Id.* at ¶ 5.)

Additionally, counsel declares:

> Although the address was written in different ways, Plaintiff is confident that the service copies of these pleadings **were delivered successfully** to the Defendant, to the home address of the Defendant. **Plaintiff has never received any return mail from the United States Post Office**. Further, there is no address beginning with 3661 W. Shields, or even W. Shield, in zip code 93722, that no other address would receive service copies.

(*Id.* at ¶ 7) (emphasis in original).

Having considered the proofs of service and counsel's supplemental declaration, the Court finds that Defendant was properly served with the summons and complaint pursuant to Federal Rule of Civil Procedure 4. There is no indication in the record that the discrepancies resulted in a failure to deliver the summons and complaint to Defendant's home address.

**B. The *Eitel* Factors Weigh in Favor of Default Judgment**

As discussed below, the Court finds that the *Eitel* factors weigh in favor of granting default judgment.

    1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted. Default has been entered against Defendant and Plaintiff has no other means to recover against him. This factor weighs in favor of default judgment.

///

### 2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Plaintiff's complaint alleges breach of contract.

The loan agreements at issue provide that they will be subject to the laws of the state of Illinois. (Doc. 1, Ex. 1 ¶ 7.6; Ex. 2 ¶ 7.6; Ex. 3 ¶ 7.6; Ex. 4 ¶ 7.6; Ex. 5 ¶ 7.6; Ex. 6 ¶ 7.6.)  In determining the enforceability of a choice-of-law provision in a diversity action, such as this one, a federal court applies the choice of law rules of the forum state, in this case California. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law.'" *1–800–Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 513–14 (2010) (quoting *Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal. App. 4th 1302, 1308 (2005) (emphasis in original). There is a strong policy in favor of enforcing choice of law provisions. *1–800–Got Junk? LLC*, 189 Cal. App. 4th at 513.

Plaintiff does not address the choice-of-law provisions. Instead, Plaintiff identifies only California's substantive law. (See Doc. 8 at p. 8.)  However, because the elements of breach of contract in Illinois and California are identical, the Court need not determine which jurisdiction's law applies. *First Am. Com. Bancorp, Inc. v. Vantari Genetics*, LLC, No. 2:19-cv-04483-VAP-FFM, 2020 WL 5027990, at *3 n. 1 (C.D. Cal. Mar. 12, 2020) (citing *Gallagher Corp. v. Russ,* 309 Ill. App. 3d 192, 199 (1999)); *Ramirez v. Baxter Credit Union*, No. 16-cv-03765-SI, 2017 WL 118859, at *4 (N.D. Cal. Jan. 12, 2017) ("The elements of a breach of contract claim under California and Illinois law are the same."). In California, "[t]o be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." *First Am. Com. Bancorp*, 2020 WL 5027990, at *3 (quoting *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal.

App. 4th 1532, 1545 (1998)). "Under Illinois law, a plaintiff suing for breach of contract must prove: (1) the contract existed, (2) the plaintiff performed the conditions precedent required by the contract, (3) the defendant breached the contract, and (4) damages." *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020). Here, Plaintiff alleges that Defendant entered into the identified Agreements, Defendant has failed to perform under the Agreements by failing to make payments when they become due, and Plaintiff is entitled to contractual money damages under the Agreements. (Compl. at ¶¶ 55-58.) The Court finds that Plaintiff's complaint sufficiently states a claim for breach of the Agreements, which weighs in favor of default judgment.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, Plaintiff seeks judgment in the amount of $1,004,179.30, which includes attorneys' fees in the amount of $7,287.50 and court costs in the amount of $583.00, against Defendant, less any net sales proceeds received from the liquidation of certain collateral vehicles. (Doc. 8 at p. 7; Doc. 8-3.) The Court finds that although the amount at stake is significant, it is proportional to the harm caused by Defendant's failure to repay the loan amounts and, therefore, this factor does not weigh against entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The facts of this case are straightforward, and Plaintiff has provided the Court with well-pled allegations and a declaration with exhibits in support. Here, the Court may assume the truth of well-pled facts in the complaint following the Clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendant's failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. *See*, *e.g.*, *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue

of material fact exists."). This factor therefore weighs in favor of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendant's default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Courts have found that where defendants were "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Upon review of the record, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc*., 238 F. Supp. 2d at 1177. Plaintiff properly served Defendant with the summons and complaint. (Docs. 12, 13.) Moreover, Plaintiff served Defendant with a copy of the request for entry of default, the motion for default judgment, and the supplemental declaration in support of the motion. (Doc. 6 a p. 3; Doc. 8 at p. 11; Doc. 13 at p. 11.) Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, Defendant has not appeared to date. Thus, the record suggests that he has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendant has not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendant.

///

## IV.    REQUESTED RELIEF

### A. Damages

The loan agreements at issue all provide that in the event of default, all indebtedness becomes immediately due and payable, Plaintiff is entitled to take possession of and dispose of the equipment and to have the debtor pay all interest and expenses incurred, including reasonable attorneys' fees. (Doc. 1, Ex. 1 ¶¶ 5.1-5.3; Ex. 2 ¶¶ 5.1-5.3; Ex. 3 ¶¶ 5.1-5.3; Ex. 4 ¶¶ 5.1-5.3; Ex. 5 ¶¶ 5.1-53; Ex. 6 ¶¶ 5.1-5.3.) As of the respective dates of default on the various agreements, Plaintiff declares that the principal amounts due and owing total $919,986.86. (Oliver Decl. at ¶ 23.) Calculated from the respective dates of default to March 3, 2023, the amount of accrued and unpaid interest due and owing under the Agreements is an amount not less than $58,808.55. *(Id.* at ¶ 25.) As of the respective dates of default, late charges in the amount of $5,318.39 have accrued. (Id. at ¶ 27.) Repossession expenses for the recovered vehicles total $11,920.00. (Id. at ¶ 28.) Calculated as of March 3, 2023, the amount due and owing under the Agreements, not including attorneys' fees and expenses, is an amount not less than $996,308.80. (*Id.* at ¶ 36(g).) These requested amounts are supported by declaration. (Doc. 8-1.) The agreements and declaration constitute sufficient proof that Plaintiff has sustained damages for the breaches of the Agreements. Plaintiff therefore seeks judgment in the amount of $996,308.80, plus post-judgment interest and attorneys' fees and costs, against Defendant Jasvinder Singh.

### B. Attorneys' Fees and Costs

Plaintiff seeks a total amount of $7,287.50 in attorneys' fees and $583.00 in court costs. (Doc. 8 at pp. 6-7; Doc. 8-2, Decl. of Ken I. Ito at ¶¶ 5, 7, 9.) California and Illinois both enforce contractual provisions allowing the collection of reasonable attorneys' fees. Cal. Civ. Proc. Code § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."); *Gil v. Mansano*, 121 Cal. App. 4th 739, 742-43 (2004); *Cap. One Auto Fin., Inc. v. Orland Motors, Inc.*, No. 09-CV-4731, 2012 WL 3777025, at *3 (N.D. Ill. Aug. 27, 2012) ("Illinois recognizes the American Rule that 'absent a statute or contractual provision, a

13

successful litigant must bear the burden of his or her own attorney's fees.'"). Under the Agreements, Defendant is obligated to pay the attorneys' fees and costs incurred by Plaintiff in the enforcement of its rights, including expenses of filing and prosecuting this action. (Doc. 8-1, Oliver Decl. at ¶ 29; Doc. 1, Ex. 1 ¶¶ 5.1-5.3; Ex. 2 ¶¶ 5.1-5.3; Ex. 3 ¶¶ 5.1-5.3; Ex. 4 ¶¶ 5.1-5.3; Ex. 5 ¶¶ 5.1-53; Ex. 6 ¶¶ 5.1-5.3.) Plaintiff is therefore entitled to recovery of attorneys' fees and costs.

To determine a reasonable attorneys' fee, or "lodestar," the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court, in considering what constitutes a reasonable hourly rate, looks to the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). The relevant community here is the Fresno Division of the Eastern District of California.

Reasonable Hourly Rate

"In the Fresno Division of the Eastern District of California, across a variety of types of litigation generally, attorneys with experience of twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $350.00 per hour, attorneys with five to ten years of experience are awarded $225.00 to $300.00 per hour, and less than $200.00 per hour for attorneys with less than five years of experience." *Beard v. Cty. of Stanislaus*, No. 1:21-cv-00841-ADA-SAB, 2023 WL 199200, at *13 (E.D. Cal. Jan. 17, 2023) (collecting cases).

Plaintiff's counsel does not indicate years of experience. Despite this deficiency, the Court takes judicial notice of the State Bar of California website, which shows that Attorney Ito was admitted to practice in California in December 2011, and has approximately 11 plus years of experience. Given this information, the Court finds a rate of $275.00 per hour to be reasonable for the services of Attorney Ito.

///

Hours Reasonably Expended

According to the declaration of Attorney Ito and the corresponding invoice, Attorney Ito has expended 18.50 hours of work. (Doc. 8-2, Decl. of Ken I. Ito at ¶ 5 and Ex. 16.) In addition, Attorney Ito declares that to "prepare this Motion for Default Judgment, to prepare Plaintiff for the default prove-up hearing, and to appear at the default prove-up hearing, it is anticipated and expected that each task will take a minimum of 4 hours, 2 hours, and 2 hours, respectively, at a rate of $275.00, for a total of $2,200.00." (Id. at ¶ 7.) Given that the Court vacated the hearing on the motion for default judgment, the Court finds it appropriate to deduct 4 projected hours for preparing for and appearing at the hearing, limiting the requested hours of work to 22.5.

Based on the foregoing, the Court will therefore recommend awarding Plaintiff $6,187.50 for 22.5 hours of work by Attorney Ito at a rate of $275.00 per hour in attempting to collect and enforce the Agreements.

In addition to attorneys' fees, Plaintiff seeks the recovery of court costs in the amount of $538.00, consisting of costs for the Court filing fee and service of process. (Doc. 8 at pp. 6-7; Decl. of Ken I. Ito at ¶ 9.) The Court finds these costs reasonable.

## V.     CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. 8) be granted with a reduction in the amount of requested attorneys' fees;
2. Default judgment be entered in favor of Plaintiff and against Defendant Jasvinder Singh in the amount of $996,308.80, plus post-judgment interest, less any net proceeds received from the liquidation of any collateral vehicles recovered;
3. Defendant be ordered to pay Plaintiff an amount of $6,725.50, which represents the reasonable attorneys' fees, expenses and costs incurred in enforcing the Agreements and in collection of the amounts due;
4. Plaintiff be awarded final possession of the unrecovered vehicles identified and, upon recovery, be authorized to liquidate the vehicles in a commercially reasonable manner.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**May 3, 2023**__                     /s/ *Barbara A. McAuliffe*
                                                                    UNITED STATES MAGISTRATE JUDGE